# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00548-CR
NO. 03-07-00697-CR

**Christopher Lee Powell, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NOS. D-1-DC-06-203467 & D-1-DC-06-203468
HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In April 2007, Christopher Lee Powell pleaded guilty to two counts of indecency with a child by exposure, a third-degree felony, and was placed on deferred adjudication community supervision. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2003). Three months later, the State filed a motion to proceed with adjudication of guilt, alleging that Powell had violated the terms of his deferred adjudication by committing subsequent criminal offenses, namely, indecency with a child by exposure, assault by committing bodily injury, assault by offensive or provocative contact, and evading arrest.[1] After a hearing, the trial court adjudicated Powell guilty of the initial offenses,

---

[1] *See* Tex. Penal Code Ann. §§ 21.11(a)(2)(A) (indecency), 38.04(a) (evading arrest) (West 2003), § 22.01(a)(1), (a)(3) (assault) (West Supp. 2007). All four offenses were alleged to have taken place on the afternoon of July 29, 2007, at a south Austin shopping center. The State produced evidence that Powell assaulted two women and exposed his genitals to a minor in the parking lots of several different businesses, fled to a nearby gas station when the police arrived to arrest him, and was eventually apprehended in an apartment complex.

sentenced him to six years' imprisonment on each count, and ordered that the sentences be served concurrently. On appeal, Powell complains that the trial court erred in failing to grant him a hearing on his motion for new trial, which asserted that he was mentally incompetent at the time of the adjudication proceedings. We affirm the judgment of the trial court.

## BACKGROUND

Although Powell's claim of mental incompetency was not formally raised until his motion for new trial, it is evident from the record that the issue of his competency was before the trial court throughout the proceedings. At the beginning of the hearing to adjudicate guilt, the trial court inquired as to whether Powell understood the nature of the proceedings against him:

Court: Are you Christopher Powell who was placed on supervision in these two cases?

Defendant: Yes, sir.

Court: Do you understand in each case a motion to proceed with adjudication of guilt has been filed?

Defendant: Yes, sir.

Court: Do you wish to have these two motions read or do you waive the reading of the motions?

Defendant: Waive.

Court: Is that because you understand the allegations as contained in each motion?

Defendant: Yes.

Court: To the allegations in each motion to proceed with adjudication of guilt, in each case, do you plead true or not true? A plea of true is an admission; a plea of not true means you wish to have it proven, if it can be, by the State, and we will have a hearing, which is what we are scheduled for. How do you plead?

2

Defendant:    Not true.

The court accepted Powell's pleas, and the proceedings continued. The State called several witnesses, including the officers who pursued and arrested Powell for the July 29 offenses, the child complainant in the subsequent alleged indecency charge, and one of the alleged assault victims. The State also called Powell's community supervision officer, who testified that he had previously discussed with Powell all of the terms and conditions of his deferred adjudication community supervision and that Powell understood the terms. The following exchange then took place on cross-examination:

> Q.    Did you ever notice any challenges for Mr. Powell in comprehending things you were telling him?
>
> A.    Occasionally.
>
> Q.    How would you describe those limitations in comprehending?
>
> A.    I sometimes had to go over certain things on more than one occasion to make sure that he understood.

Against the advice of his counsel, Powell testified on his own behalf. He admitted to having run from police but denied committing any of the other offenses prior to evading arrest. Instead, Powell testified that he had been in the area to drop off employment applications and, as he approached the bus stop, he saw police cars; at that point, he "just panicked" and ran because his probation officer told him "to have no kind of contact with the police department." On cross-examination, the State asked if Powell understood that the victims who testified had come into the courtroom, pointed at Powell, and said that he "did those things." Powell responded in the

3

affirmative, and the prosecutor then asked, "Those were the same kinds of things that you were placed on probation for?" Powell disagreed, stating, "One victim said I assaulted her. I'm not on probation for assault."

The State also asked Powell whether any other witnesses would testify that he had been submitting employment applications on the day in question:

Q.    Who is coming in?

A.    I don't know them. All I know the people that work for Burlington Coat Factory. I just turned in the application to them.

Q.    Are they going to come in to court and testify that you did that?

A.    If I could get hold of them or something.

Q.    Have you tried to get a hold of them since you have been in custody for the last three months?

A.    No, sir because you can't get a hold of nobody when you are out there except [if] you have a phone card or your people accept collect calls.

Q.    Did you ask your attorney to ask the Court to issue subpoenas for those things and those people?

A.    No, sir. I asked for the police report, but he said that he didn't have it.

After both sides rested and closed, the court found the State's allegations to be true and adjudicated Powell guilty of both of the underlying offenses of indecency with a child by exposure. Before the court assessed punishment, Powell's counsel made the following statement:

Your Honor, I want to very briefly say that I think it's plain that my client is a simple young man. I don't know that even being guilty of these allegations he has difficulty comprehending the gravity of the circumstances from the perspective of society and the victims. I believe he needs help more than he needs punishment. . . . [H]e does apparently have some confusion about his role as a man in regards to women and . . . sending him to prison is only going to make matters worse for him.

4

The court then gave Powell the opportunity to make a statement; he said, "I agree with my lawyer about the imprisonment thing and be placed back on probation to spend my life better and my life better in the community. And that's all."

Powell was sentenced to six years in the institutional division of the Texas Department of Criminal Justice on each indecency count, with the sentences to run concurrently. Powell timely filed a notice of appeal and motion for new trial, accompanied by an affidavit executed by his newly appointed appellate counsel, asserting that Powell was mentally incompetent at the time of the adjudication proceedings. Powell's motion for new trial was overruled by operation of law, and this appeal followed.

**ANALYSIS**

Powell contends that the trial court erred in failing to hold a hearing on his motion for new trial because his motion raises facts outside the record relating to his claim of mental incompetency that would entitle him to relief.[2] We disagree. Powell's motion for new trial and supporting affidavit alleged that, due to his mental deficit or developmental delay, he did not understand the proceedings against him and that this resulted in a violation of his rights to due process and due course of law. The affidavit from Powell's appellate counsel recited that, based on her 45-minute interview with Powell following the adjudication hearing and her experience in representing a large number of criminal defendants, Powell did not understand the nature or effect of the proceedings. Specifically, the affidavit states that Powell: (1) did not know that he had been

---

[2] He does not assert, however, that the trial court erred by failing to conduct an inquiry sua sponte regarding Powell's competency at the time of the revocation hearing.

5

found guilty or that a sentence had been assessed; (2) thought that the adjudication hearing was a pretrial proceeding and that his trial would take place later; (3) believed that the witnesses did not "testify" at the hearing, but rather "just showed up and answered some questions," and (4) believed that the trial judge had "offered" him a six-year sentence, which did not mean that he had actually been sentenced, even though Powell remembered getting "a paper" that said he could appeal. The affiant concluded that, in her opinion, Powell needed to be evaluated by a medical professional in order to identify his disabilities and assess the level of his cognitive functioning.

We review a trial court's refusal to hold an evidentiary hearing on a motion for new trial for an abuse of discretion. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)).

The right to a hearing on a motion for new trial is not absolute. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005); *Reyes v. State*, 849 S.W.2d 812, 815-16 (Tex. Crim. App. 1993). It has long been held that a trial court may decide a motion for new trial based on sworn pleadings and affidavits without hearing oral testimony. *See Holden*, 201 S.W.3d at 763; *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985); *Vallone v. State*, 147 S.W.2d 227, 230 (Tex. Crim. App. 1941). As a prerequisite to obtaining a hearing on a motion for new trial, a defendant must support his motion with an affidavit showing the truth of the grounds for attack. *Martinez*, 74 S.W.3d at 21. Generally, a trial court should hold a hearing if the motion and attached affidavit raise matters not determinable from the record that could entitle the accused to relief. *Wallace*, 106 S.W.3d at 108.

6

To be sufficient to entitle the defendant to a hearing, the motion for new trial and supporting affidavit need not establish a prima facie case for a new trial; however, the motion and affidavit must reflect that reasonable grounds exist for holding that such relief could be granted. *Id.* Affidavits that are unsupported by facts are insufficient to put the trial court on notice that reasonable grounds for relief exist. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). The purpose of the hearing is to give the defendant an opportunity to fully develop the matters raised in his motion that, if proved at a hearing, could entitle him to relief. *Wallace*, 106 S.W.3d at 108; *Martinez*, 74 S.W.3d at 21.

When competency is challenged in a motion for new trial, the trial court does not look to see whether the evidence raises a bona fide doubt as to competence; instead, it applies the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence. *See Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We apply the abuse-of-discretion standard because, at this stage of the proceeding, the trial court determines whether the accused's incompetency, if any, impugned the integrity of its judgment during trial, and the trial court is in the best position to make this determination. *See Edwards v. State*, 993 S.W.2d 171, 176 (Tex. App.—El Paso 1999, pet. ref'd). We consider all of the competency evidence presented in support of the motion for new trial and reverse only if the trial court abused its discretion. *Id.*

From our review of the entire record, we conclude that the trial court did not abuse its discretion in declining to hold a hearing on Powell's motion for new trial. The record itself contains sufficient evidence for the trial court to have reasonably concluded that Powell was

7

competent—including Powell's own statements during the adjudication proceeding—that cast doubt on and in some instances contradict the factual allegations made in the affidavit in support of Powell's motion. For example, the allegation that Powell "did not know that any court proceedings finding him guilty or assessing a sentence had occurred" is inconsistent with Powell's own statements to the trial court indicating that he understood the nature of the adjudication proceedings and the allegations made by the State that he had violated the terms of his community supervision. Likewise, Powell stated to the court that he understood that he had already pleaded guilty to two counts of indecency with a child by exposure. His understanding was further demonstrated during his testimony at the adjudication hearing when he corrected the prosecutor by stating that he was not on probation for the "same" offenses the State now alleged him to have committed. Moreover, his testimony suggested that he could comprehend that he would be allowed to call witnesses and present a defense in the present proceedings and that he had conferred with his counsel in asking for the police report to be made available to him.[3]

Furthermore, the record demonstrates that the trial court had already been made aware that Powell's cognitive function was potentially impaired, as the court had heard testimony from Powell's probation officer that Powell occasionally had difficulty comprehending and trial counsel's statements concerning Powell's limited ability to understand the gravity of the charges against him and his confusion about gender and social roles. On this record, we believe that the trial court was

---

[3] We further note that the record demonstrates evidence that Powell was competent at the time of the adjudication hearing, while the facts asserted in his appellate counsel's affidavit concern Powell's understanding a month after the hearing took place. The test for determining a defendant's competency, however, considers a defendant's "present ability" to consult with his lawyer with a reasonable degree of rational understanding. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). Even if we assume that the allegations contained in the affidavit are true, they do not provide a basis for determining that Powell was incompetent at the time of the adjudication hearing or that his ability to consult with his lawyer was compromised at that time.

able to decide Powell's motion for new trial based solely on the sworn pleadings and affidavits without needing to hear further testimony. Accordingly, we overrule Powell's point of error and affirm the judgment of the trial court.

## CONCLUSION

Because the trial court did not err in refusing to hold a hearing on Powell's motion for new trial, we affirm the judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   August 14, 2008

Do Not Publish