PD-0547_0550-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/11/2015 9:31:52 AM
Accepted 5/12/2015 2:35:00 PM
ABEL ACOSTA
CLERK

***ORAL ARGUMENT REQUESTED***

CAUSE NO. _____

## IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

\* \* \* \* \*

## DAVID ALLEN RUSSELL, Petitioner / Appellant

## VS.

## THE STATE OF TEXAS, Respondent / Appellee

\* \* \* \* \*

**On Petition from a Decision of the Court of Appeals
for the Thirteenth District of Texas, in Cause No(s)
13-13-00372-CR
13-13-00373-CR
13-13-00374-CR
13-13-00375-CR**

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 12, 2015

ABEL ACOSTA, CLERK

Mr. Rafael De La Garza
The De La Garza Law Firm
Bar No. 00789251
1420 W. Exchange Pkwy
Building C., Suite 190
Glendover Professional Center
Allen, Texas 75013
rdelagarza@me.com

Mr. Marston Alexander
Law Offices of Marston Alexander
Bar No. 00999600
1420 W. Exchange Pkwy, Ste. 190
Glendover Professional Center Building C
Allen, Texas 75013
malexander@sbcglobal.net


**COUNSELS FOR PETITIONER/APPELLANT**
 DAVID ALLEN RUSSELL,

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT'S TRIAL COUNSEL**
Mr. Todd Shapiro
The Shapiro Law Firm
701 E. 15th Street
Plano, Texas 75074

**APPELLANT'S APPELLATE COUNSEL**
Mr. Rafael De La Garza                    Mr. Marston Alexander
The De La Garza Law Firm              Law Offices of Marston Alexander
Bar No. 00789251                           Bar No. 00999600
1420 W. Exchange Pkwy                  1420 W. Exchange Pkwy
Building C., Suite 190                       Building C., Suite 190
Glendover Professional Center          Glendover Professional Center
Allen, Texas 75013                           Allen, Texas 75013

**STATE'S TRIAL COUNSEL**
Ms. Shannon Miller, Asst. Dist. Attorney
Ms. Crystal Levonius, Asst. Dist. Attorney
Collin County District Attorney's Office
2100 Bloomdale Rd
McKinney Texas 75071

**STATE'S APPELLATE COUNSEL**
Mr. Greg Willis, Collin County District Attorney
Mr. John Rolater, Asst. District Attorney
Collin County District Attorney's Office
2100 Bloomdale Rd.
McKinney, Texas 75071

**TRIAL COURT JUDGE**
Honorable John Roach, Jr.
296th District Court
2100 Bloomdale Rd., Suite 20021
McKinney, Texas 75071

# TABLE OF CONTENTS

Identity of Parties ..................................................................................................3

Table of Contents .................................................................................................4

Index of Authorities ............................................................................................5

Statement Regarding Oral Argument ...............................................................8

Statement of the Case and Procedural History ...............................................8

Court of Appeals Opinion...................................................................................11

Ground for Review...............................................................................................11

Argument and Analysis......................................................................................12

Conclusion ............................................................................................................23

Prayer for Relief...................................................................................................24

Certificate of Service ..........................................................................................25

Certificate of Compliance ..................................................................................26

Appendix A ............................................................... Opinion dated April 9, 2015

# INDEX OF AUTHORITIES

**Cases:**                                                                                                          **Page**

Butler v. State, 736 S.W. 2d. 668, (Tex. Crim. App. 1987) ...................................13

Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d. 215 (1963) ...........11

Ex Parte Reed, 271 S. W. 3d. 698 (Tex. Crim. App. 2008) ...................................14

Ex Parte Richardson, 70 S.W. 3d. 865 (Tex. Crim. App. 1992) ............................19

G. Stowers Furniture v. American Indemnity CoA. Stow. 15 S.W. 2d. 544 (Tex. Crim. App. 1929, holding approved)…………………………………………………...18

Hampton v. State, 86 S.W. 3d. 603 (Tex. Crim. App. 2002...................................12

Harm v. State, 183 S. W. 3d. 403 (Tex. Crim. App. 2006) ...................................12

Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d. 490 (1995) .......13

Little v. State, 991 S. W. 2d. 864 (Tex. Crim. App. 1999)....................................19

Lempar v. State, 191 S.W. 3d. 230 (Tex. Ap. San Antonio,  2005, pet. ref'd)  .....19

McFarland v. State, 928 S.W. 2d. 482 (Tex. Crim. App. 1996)…………………..13

Pena v. State, 353 S.W. 3d. 797 (Tex. Crim. App. 2011)………………………...11

Stricklandv.Washington, 466 U.S. 668, 102 S. Ct 2052, 80 L. Ed. 2d. 674 (1984)20
Thomas v. State, 841 S. W. 2d. 399 (Tex. Crim. App. 1992) ……………..……..16

United States v.Bagley, 473 U.S. 667, 1055 S. Ct. 3375, 87 L. Ed. 2d. 481

(1985)…………………………………………………………………………...13

**Statutes and Rules:**

Texas Rules of Appellate Procedure Rule 4.1 ........................................................ 11
Texas Rules of Appellate Procedure Rule 44.2(a)…….…………………………....23
Texas Rules of Appellate Procedure Rule 68.2(a)…….…..………………….......11
Tex. Code Crim. Proc. Art. 3.03 (Vernon 2014)……………………………………10
Tex. Code Crim. Proc. Art. 26.02 (Vernon 2014)………………………….............23
Tex. Code Crim. Proc. Art. 39.14 (h)(k)(Vernon 2014)...…………………….......16
Tex. Penal Code Ann. Art. 22.011 (Vernon 2002,2005, 2007,2010,2011)………...8
Tex. Penal Code Ann. Art. 21.11 (Vernon  2002,2005,2007,2010,2011)…….…....8
Tex. Penal Code Ann. Art. 12.33 (2002,2005,2010,2011)……………….……….10

## STATEMENT REGARDING ORAL ARGUMENT

This is a case involving a decision by the Thirteenth Court of Appeals where the Court did not properly analyze whether a Brady violation occurred and oral argument would assist in demonstrating that analysis to the Court of Criminal Appeals.

**To The Honorable Judges of the Court of Criminal Appeals:**

COMES NOW, DAVID ALLEN RUSSELL, Petitioner herein, and Appellant before the Court of Appeals for the Thirteenth District of Texas at Corpus Christi, Texas, and seeks discretionary review from this Honorable Court from an opinion affirming his convictions for the offense(s) of sexual assault and indecency by contact in violation of Tex. Pen. Code Ann. § 22.011 and 22.11.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

The Appellant was charged by indictment in cause number 199-81322-2012, with Count One of Aggravated Sexual Assault of Child and Count II, III, IV, V, Indecency with a Child by Contact alleging S.S. as victim. (R.R. Vol. VI., 199-81322-2012, p. 4).[1] In cause number 199-81323-2012, Count I., Sexual Assault of a Child, Count II., Indecency with a Child, Count III., Indecency with a Child alleging M.C. as the victim. (C.R. Vol. I., 199-81323-2012). In cause number 199-80629-2012,[2] Count I Indecency with a Child, Count II., Indecency with a Child and Count III., Sexual Assault alleging E.L.F. as the victim. (C.R. Vol. I., 199-80629-2013, p. 9). In cause number 199-81325-2012, Sexual Assault alleging M.H. as victim. (C.R. Vol. I., 199-81325, p. 11). In 199-81326-2012 he was

---

[1] The Trial Court had granted a direct verdict for Count III in 199-81322-2012. (R.R. Vol. XI., p. 24).
[2] This case was a reindictment of 199-81324-2012 (C.R. Vol. I., 199-80629-2012, p. 9)

charged with Sexual Assault of Child in Count I and with Indecency with a Child in Count II alleging H.B. as victim. (C.R. Vol. I., 199-81326-2012, p. 14). [3]

The Appellant pled not guilty before the Jury in all five cause numbers. (R.R. Vol. VII., p. 283). On April 23, 2013, he was found not guilty of Counts I, II and IV in 199-81322-2012.[4] In cause number 199-81323-2012 he was found Guilty of Count I., Indecency with a Child and Guilty of Count III., Indecency with a Child. He was found Not Guilty of Count II. (R.R. Vol. XII., p. 31). In cause number 199-80629-2013, he was found Not Guilty of Count I and Count I and Guilty of Count III., Sexual Assault. (R.R. Vol. XII., p. 30). In 199-81325-2012, he was found Guilty of Sexual Assault. (R.R. Vol. XII., p. 30). In 199-81326-2012 he was found Not Guilty of Count I, Aggravated Sexual Assault of a Child and Guilty of Count II., Indecency with a Child. (R.R. Vol. XII., p. 30, 31).

On April 24, 2013 the Appellant was sentenced to Fifteen years (15) TDCJ Institutional Division for Count II , Indecency with a Child, and Eight (8) years Count III., Indecency with a Child in 199-81323-2012 (R.R. Vol. XIV., p. 272, 273, 264). In cause number 199-80629-2012 he was sentenced to Ten (10) years confinement in TDCJ Institutional Division for Count III., Sexual Assault. (R.R. Vol. XIV., p. 263). In cause number 199-81325-2012, he was sentenced to Ten

---

[3] Sexual assault of a child Tex Penal Code Ann. 22.011 (Vernon 2002,2005,2007,2010,2011); Indecency with a child Tex Penal Code Ann. 21.11(Vernon 2002,2005,2007,2010,2011)
[4] The Trial Court had granted a direct verdict for Count III in 199-81322-2012. (R.R. Vol. XI., p. 24).

(10) years confinement in Texas Department of Criminal Justice, Institutional Division. (R.R. Vol. XIV., p. 263). In 199-81326-2013 he was sentenced to Twelve (12) years confinement TDCJ, Institutional Division Count II., Indecency with a Child. (R.R. Vol. XIV., p. 263).[5]

The Trial Court stacked the sentences in cause number 199-81323-2012, Count I to be served before Count III. The remaining cases were to run concurrently. (R.R. Vol. XIV., p. 268, 269).[6] The Appellant filed a Motion for New Trial on May 17, 2013. (C.R. Vol. I., 199-80629-2013, p. 132; 199-81323-2012, p. 118; 199-81325-2012, p. 108; 199-81326-2012, p. 111). A Motion for New Trial hearing was conducted on June 10, 2013. (R.R. Vol. XV., p. 4). A Notice of Appeal was filed on June 4, 2013 (C.R. Vol. I., 199-80629-2013, p. 148; 199-81323-2012, p. 134; 199-81325-2012, p. 124; 199-81326-2012, p. 127)

The Court of Appeals for the Thirteenth District of Texas at Eastland in an opinion dated January 29, 20015, which affirmed Petitioner's convictions. Petitioner filed a motion for rehearing and the Court of Appeals denied the motion

---

[5] Sexual assault of a child by touching is a 2nd degree felony with a punishment range of not less than 2 years or more than 20 years in the Texas Department of Criminal Justice, Institutional Division and an optional fine up to $10,000.00. Tex Penal Code Ann. art. 22.011(f); Tex. Penal Code Ann. art. 12.33 (Vernon 2002,2005,2007,2010,2011). Indecency with a child by contact is a 2nd degree felony with a punishment range of not less than 2 years or more than 20 years in the Texas Department of Criminal Justice, Institutional Division and a fine up to $10,000.00. Tex. Penal Code Ann. art. 21.11(d), Tex. Penal Code Ann. art 12.33 (Vernon 2002, 2005,2007,2010,2011).

[6] Tex. Code Crim. Proc. Ann art. 3.03 (Vernon 2014)

10

for rehearing and substituted a new memorandum opinion and judgments on April 9, 2015. (See Appendix A) Petition for Review is timely if filed on or before May 11, 2015. Rules 4.1 and 68.2(a), Texas Rules of Appellate Procedure.

## COURT OF APPEALS OPINION

The Court of Appeals found the trial court did not abuse its discretion by denying the Appellant's motion for new trial by finding that the State did not commit a "Brady" violation.

## GROUND FOR REVIEW

The Thirteenth Court of Appeals erred when it held that the trial court did not abuse its discretion by overruling Appellant's motion for new trial because the State failed to turn over favorable evidence to the Appellant which was a violation of Appellant's rights to due process under Brady v. Maryland, 373 U.S 83, 87, 83 S. Ct. 1194, 1196-1197, 10 L. Ed. 2d. 215 (1963). " More specifically, the Thirteenth Court of Appeals failed to properly analyze the Brady violation under the standard set forth in "Brady" and this court's opinion in Pena v. State, 353 S.W. 3d. 797, 809 (Tex. Crim. App. 2011).

11

## ARGUMENT

In Brady v. Maryland, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S 83, 87, 83 S. Ct. 1194, 1196-1197, 10 L. Ed. 2d. 215 (1963). See also Pena v. State, 353 S.W. 3d. 797, 809 (Tex. Crim. App. 2011). The Court of Criminal Appeals has held that to find reversible error under **Brady**, an Appellant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; 2) the undisclosed evidence constitutes exculpatory or impeachment evidence that is favorable to him, that if, disclosed and used effectively, the evidence may make a difference between conviction and acquittal and 3)the evidence is material, that is, presents a reasonable probability that had the evidence been disclosed, the outcome of the proceeding would have been different. Pena, 353 S.W. 3d. at 809, 812; Harm v. State, 183 S.W. 3d. 403, 406 (Tex. Crim. App. 2006). An alleged **Brady** violation is analyzed "in light of all the other evidence adduced at trial. Hampton v. State, 86 S.W. 3d. 603, 612-613 (Tex. Crim. App. 2002).

**Brady** has been extended to include the required revelation to an accused of material exculpatory evidence in possession of police agencies and other parts of

the "prosecutorial team." Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d. 490 (1995). Evidence whose value is limited to that of impeachment must also be divulged to the accused if the failure to do so by the State undermined confidence in the trial's outcome. United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d. 481(1985).

The Supreme Court has consistently treated the failure by the State to divulge potentially exculpatory evidence (whether directly exculpatory or exculpatory as having impeachment value) as a violation of an accused's due process right to a fair trial where the failure undermined confidence in the trial's outcome. The remedy prescribed in such cases is reversal of his conviction and remand of the cause to the trial court for further proceedings. Brady v. Maryland; Kyles v. Whitely; United States v. Bagley. If all three factors are met, the Appellate Court must reverse the conviction. See McFarland v. State, 928 S.W. 2d. 482, 511 (Tex. Crim. App. 1996); Butler v. State, 736 S.W. 2d. 668, 670 (Tex. Crim. App. 1987).

## PRONG 1

## THE STATE SUPPRESSED EVIDENCE

The Court of Appeals concluded and the State conceded that the first element was satisfied, however the background concerning this element bears repeating.

13

After the trial concluded on April 24, 2013, Todd Shapiro, the Appellant's Trial Counsel, had a conversation with Judge Lance Baxter who presides over the County Court at Law number 3, Collin County, Texas. (R.R. Vol. XV, p. 13, 38)(R.R. Vol. XV., 13,14,15,40). During that conversation, Judge Baxter related that he had been contacted by the State regarding documents he might have in his former representation of E.L.F in 2005 which would show she was treated by Appellant. (R.R. Vol. XV., p. 15, 40)(C.R. Vol. I 199-80629-2013, p. 141-142; 199-81323-2012, p. 127-128; 199-81325-2012, p. 117-118; 199-81326-2012, p. 120-121). He related finding the *Stower's* letter and giving it to Investigator Bowers (R.R. Vol XV, p.14,16)(C.R. Vol. I 199-80629-2013, p. 141-142; 199-81323-2012, p. 127-128; 199-81325-2012, p. 117-118; 199-81326-2012, p. 120-121).).[7]

Mr. Shapiro immediately texted, emailed and phoned Shannon Miller regarding the letter. (R.R. Vol. XV. P. 40)(C.R. Vol. I 199-80629-2013, p. 143-143; 199-81323-2012, p. 129-130; 199-81325-2012, p. 119-120; 199-81326-2012, p. 122-123). Mr. Shapiro testified that Ms. Miller contacted him back and said that there was no **Brady** information that wasn't turned over. (R.R. Vol. XV., p. 40).

---

[7] "The State" includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case. Ex parte Reed, 271 S. W. 3d. 698, 726 (Tex. Crim. App. 2008).

Based upon that information, a Motion for New Trial was filed and a hearing was held on June 10, 2013. (R.R. Vol. XV). Judge Lance Baxter testified that he was contacted by the State to determine if he had any documents that would support E.L.F's contention she had been treated by Appellant after the October 2005 car accident. (R.R. Vol. XV., p. 27). (C.R. Vol. I 199-80629-2013, p. 141-142; 199-81323-2012, p. 127-128; 199-81325-2012, p. 177-118; 199-81326-2012, p. 120-121). He testified that he advised Investigator Bowers that, based upon his *Stower's* letter, E.L.F was not treated by Appellant for injuries suffered in the car accident in 2005. (R.R. Vol. XV., p. 15; C.R. Vol. I 199-80629-2013, p. 141-142; 199-81323-2012, p. 127-128; 199-81325-2012, p. 117-118; 199-81326-2012, p. 120-121).

Shannon Miller testified she was the prosecutor in this case and received an email (Exhibit 5) from Investigator Bowers on April 16, 2013 regarding their initial conversation to obtain Judge Baxter's documentation. (R.R. Vol XV., p. 5). She testified she received a copy of Defense exhibit 1, the Stower's letter, on April 16, 2013 while cross examination of a witness was being conducted. (R. R. Vol. XV., p. 27). She testified that Investigator Bowers whispered in her ear that the information did not show anything about Appellant. (R.R. Vol. XV., p. 27). She admitted that she did not look at the letter until after the trial concluded and was asked about it by Mr. Shapiro. (R.R. Vol. XV., p. 27). She also admitted she never

disclosed the letter during guilt/innocence or punishment to Appellant's trial counsel. (R.R. Vol. XV., p. 25,26).[8] Consequently, the State suppressed the evidence.

## PRONG 2

## THE SUPPRESSED EVIDENCE WAS FAVORABLE TO APPELLANT

The suppressed evidence constitutes exculpatory or impeachment evidence that is favorable to the defendant, that is, if disclosed and used effectively, the evidence may make a difference between acquittal and conviction. Pena v. State, 353 S.W. 3d. 797, 812 (Tex. Crim. App. 2011); Harm v. State, 183 S.W. 3d. 403, 406, 408 (Tex. Crim. App. 2006). Favorable evidence includes exculpatory evidence as well as impeachment evidence. Exculpatory evidence is that which may justify, excuse or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies or contradicts other evidence. Id. at 408; Thomas v. State, 841 S.W. 2d. 399, 404 (Tex. Crim. App. 1992).

In the present case, the Court of Appeals erred when it concluded that Judge Baxter's *Stower's* letter was not "favorable" to the appellant. The Court of Appeals

---

[8] As of January 1, 2014, the State is required under Tex. Code Crim. Proc. Art. 39.14 (h) to disclose to the defendant any exculpatory , impeachment, or mitigating document, item or information in the possession, custody or control of the State that tends to negate the guilt of the Defendant or would tend to reduce the punishment for the offense charged and (k) if at any time before, during or after the Trial the State discovers any additional document, item or information required to be disclosed under subsection (h), the State shall promptly disclose the existence of the document, item or information to the defendant or the Court. Tex Code Crim. Proc art. 39.14 (Vernon 2014).

simply said the letter was not favorable to the Appellant because it never mentioned the Appellant. However, the Court of Appeals in their analysis failed to properly address all of the elements as set forth in *Brady* and *Pena*. Specifically, the court deemed the letter was not favorable to the Appellant but the Court, in determining it was not favorable, failed to analyze if the letter had been used effectively it would have made a difference in the outcome. This analysis is required but the court failed to conduct the analysis. The facts below and developed at the motion for new trial hearing clearly established that if the letter had been disclosed Defense counsel's effective use of the letter would have resulted in a different outcome thereby supporting Appellant's claim that the letter was favorable.

E.L.F. testified on April 18, 2013, **two** days **after** Shannon Miller acknowledged she had received the letter from Investigator Bowers. (R.R. Vol XV., p. 247-290). In fact, Ms. Miller testified that the *Stower's* letter was the same information they had from the medical records, therefore, she determined there was "no evidence that it would be adding, nothing there would be based upon that." (R.R. Vol. XV., p. 28). However, Mr. Shapiro testified that he would have used the *Stower's* letter. (R.R. Vol XV, p. 35). He testified he would have called Judge Baxter as a witness and introduced the letter into evidence. (R.R. Vol. XV., p. 38). He would have used the letter in cross examination of the E.L.F. as he did the

17

medical records to show that she was not telling the truth. (R.R. Vol. XV., p. 39). (C.R. Vol. I 199-80629-2013, p. 141-142; 199-81323-2012, p. 127-128; 199-81325-2012, p. 177-118; 199-81326-2012, p. 120-121). The *Stower's* letter supports the Appellant's theory that E.L.F. was not treated for any injuries suffered in the 2005 car accident.

The letter as a whole was Brady material, not only because it did not list Dr. Russell as a medical provider, but the letter also listed other medical providers. The Defense, in addition to calling Judge Lance Baxter to testify, would have had the ability to subpoena the medical providers listed in the "Stowers" letter to determine whether Dr. Russell was mentioned in those medical providers' files relating to ELF. The absence of any notes referring to Dr. Russell would have supported Judge Baxter's testimony that the failure to include Dr. Russell in the "Stowers" letter meant ELF was not treated by Dr. Russell. It also, fails logic that a person who is seeking to maximize their damages in a lawsuit would forget to include all the doctors they had seen for treatment. Finally, this information was material since the jury only found the Appellant guilty of the sexual assault count which ELF says occurred in October 2005 and acquitted him of the two indecency by contact counts. If the jury had evidence that ELF had not seen the Appellant for the car accident, it is certain the verdict would have been different. Additionally,

18

the Court of Appeals in justifying their finding that the letter was not favorable to the Appellant determined that a possible reason that the Appellant's name wasn't in the letter was because ELF didn't tell him. Well, it stands to reason, that if the letter had been disclosed to defense counsel, defense counsel could have established that her failing to mention she received treatment from Appellant to her lawyer, as a prior inconsistent statement, impeaching her trial testimony that she did receive treatment from the Appellant as a result of the car accident in October 2005.

## THIRD PRONG

## THE EVIDENCE IS MATERIAL

The Court of Appeals stopped their analysis and did not address the third prong of Brady which is materiality. The evidence is material, that is, it presents a reasonable probability that had the evidence been disclosed, the outcome of the proceeding would have been different. Pena v. State, 353 S.W. 3d. 797, 812 (Tex. Crim. App. 2011); Harm v. State, 183 S.W. 3d. 403, 406, 408 (Tex. Crim. App. 2006). A reasonable probability is sufficient to undermine confidence in the outcome of the trial[9] Little v. State, 991 S.W. 2d. 864, 866 (Tex. Crim. App. 1999).

---

[9] The inquiry is whether the State's failure to disclose the evidence undermines confidence in the jury's verdict. See Lempar v. State, 191 S.W. 3d. 230, 241 (Tex. App. – San Antonio, 2005, pet. ref'd., citing Ex parte Richardson, 70 S. W. 3d. 865, 870 n. 22 (Tex. Crim. App. 1992). The question is not whether the defendant would more likely than not have received a different verdict with the evidence but whether in its absence he received a fair trial, understood as a trial

19

The mere possibility that undisclosed evidence could have helped the defense or affected the defense or affected the trial's outcome does not establish "materiality" in the constitutional sense. <u>Hampton v. State</u>, 86 S.W. 3d. 603, 612 (Tex. Crim. App. 2002). Whether the evidence is material is viewed in the context of the overall strength of the State's case. Id. at 613. A verdict that is only weakly supported by the record is more likely to be affected by any **Brady** error than a verdict that is strongly supported <u>Strickland v. Washington</u>, 466 U.S. 668, 696, 104 S. Ct. 2052, 2069, 80 L. Ed. 2d. 674 (1984).

The *Stowers* letter was furnished to the prosecutor on April 16, 2013. (R.R. Vol. XV., p. 27). During the course of the trial Detective Davis testified that the records were missing from E.L.F.'s file (R.R. Vol. VIII., 27, 123) as did E.L. (R.R. Vol. VIII., p. 27, 123). The October 2005 date was important to the State. Cause number 199-81323-2012 was reindicted to 199-80629-2013 alleging the 2005 date for Count III. (C.R. Vol. I., 199-80629-2013, p. 81) While the Appellant was charged with three separate offenses alleging E.L.F as the perpetrator, he was found Not Guilty of Count I and Count II, the Indecency with a Child counts. (R.R. Vol. XII., p. 28). He was found Guilty of the October 2005 offense, the Sexual Assault. As stated earlier, there is a reasonable probability that if the *Stower's*

---

resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is shown when the Government's evidentiary suppression undermines confidence in the outcome of the trial. <u>Kyles v. Whitly</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d. 490 (1995). The materiality standard is not a sufficiency of evidence test. Id. at 434-35.

letter been disclosed to the Appellant's trial counsel and he had been able to use it in his cross examination of E.L.F., then the results of the proceedings would have been different, that is, he would have been found Not Guilty in Count III.

Shannon Miller testified that she did not turn over the letter since "it did not mention Dr. Russell" and "did not add anything." (R.R. Vol. XV., p. XV., p. 26,28). While the *Stower's* letter "did not add anything" to the State's case, it would have been an explosive point used by the Appellant. Additionally, the State was seeking evidence to support ELF's testimony that she was treated by Dr. Russell. If the letter had contained Dr. Russell as a provider, it is a certainty that the State would have called Lance Baxter to support ELF's testimony by introducing the letter and would have "added" something to the State's case.

The Court of Appeals erred when it the found that the Appellant was not entitled to a New Trial due to the failure of the State to provide exculpatory impeachment evidence, i.e., the *Stowers* letter that was discovered during trial. The State failed to disclose this evidence. The undisclosed evidence constituted exculpatory impeachment evidence that was favorable to the Appellant. If that evidence had been disclosed and used effectively, the evidence would have made a difference between conviction and acquittal. Finally, the evidence is material, in that there is a reasonable probability that had the evidence been disclosed, the

outcome of the proceedings would have been different and would have affected all of the convictions.

## ALL OF THE CONVICTIONS MUST BE OVERTURNED

All of the convictions must be overturned because all of the above cases were tried together and intrinsically entwined and the Brady violation in the ELF case affected the remaining cases. The State, by consolidating and calling numerous extraneous witnesses intrinsically entwined all four cases.  In addition, the Court, in its charge to the Jury stated *You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.* (C.R. Vol. I., 199-80629-2013, p. 111;199-81323-2012, p. 92; 199-81325-2012, p. 89,90; 199-81326-2012, p. 94). And also included in the charge *evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,   absence of mistake or accident.*  (C.R. Vol. I.,

199-80629-2013, p. 111; 199-81323-2012, p. 92; 199-81325-2012, p. 90; 199-81326-2012, 94)

The State argued the victimization of these women as a group ad infinitum in their closing argument. (R.R. Vol. XII., p. 236,238,239,240,243,244). If the State had turned the evidence over after closing arguments, then a mistrial would be necessary for all cases. See Pena v. State,[10] The same issue would be present if the State had provided the documents during punishment. The State's trial strategy was to present as many victims as possible to the jury, thus their decision to consolidate the cases for trial. Consequently, since the cases were intrinsically entwined, then all four cases should be reversed and remanded for a new trial.[11]

## CONCLUSION

The Court of Appeals erred in its failure to properly analyze the Brady violation. The record as a whole demonstrated that the "Stowers Letter" was withheld by the State, was favorable and was material. Therefore, all of the Appellant's convictions must be overturned and a new trial conducted.

---

[10] The introduction of evidence after the conclusion of closing arguments is prohibited Tex. Code Crim. Proc. Art. 26.02 (Vernon 2013).

[11] Tex. R. App. P. 44.2(a) It cannot be determined beyond a reasonable doubt that the Court did not contribute to conviction or punishment.

## PRAYER FOR RELIEF

Appellant/Petitioner respectfully prays that this Court grant the Petition for Discretionary Review, after briefing and argument, reverse the Court of Appeals' opinion and return the cases to the Trial Court for a New Trial.

Respectfully submitted,

/s/Rafael De Le Garza
Mr. Rafael De La Garza
The De La Garza Law Firm
Bar No. 00789251
1420 W. Exchange Pkwy
Building C., Suite 190
Glendover Professional Center
Allen, Texas 75013
214-740-1708

/s/Marston Alexander
Mr. Marston Alexander
Law Offices of Marston Alexander
Bar No. 00999600
1420 W. Exchange Pkwy, Ste. 190
Glendover Professional Center Building C
Allen, Texas 75013
214-739-0500(Office)
214-739-4501(Cell)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appellant's Brief was e filed and emailed to the Collin County District Attorney's Office, Appellate Division, 2100 Bloomdale Rd., McKinney, Texas 75071 at daappeals@collincountytx.gov on this the 7th day of May, 2015.

/s/Rafael De La Garza
Mr. Rafael De La Garza
The De La Garza Law Firm
Bar No. 00789251
1420 W. Exchange Pkwy
Building C., Suite 190
Glendover Professional Center
Allen, Texas 75013
214-740-1708

/s/Marston Alexander
Mr. Marston Alexander
Law Offices of Marston Alexander
Bar No. 00999600
1420 W. Exchange Pkwy, Ste. 190
Glendover Professional Center Building C
Allen, Texas 75013
214-739-0500(Office)
214-739-4501(Cell)

# **CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 4,048 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

__s/ Rafael De La Garza_____
Rafael De La Garza

# APPENDIX "A"



COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

DAVID ALLEN RUSSELL,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

On appeal from the 199th District Court
of Collin County, Texas.

MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion on Rehearing by Chief Justice Valdez**

We withdraw our opinion and judgments in these cause numbers and substitute

this memorandum opinion and accompanying judgments in their place. Appellant, David

Allen Russell, was convicted of one count of sexual assault of a child, two counts of sexual

assault, and three counts of indecency with a child regarding the victims, M.C., M.H., H.B., and E.L. By two issues, appellant contends that he was denied due process of law by the State's failure to turn over exculpatory evidence, which tainted the four cases, and that "the State suborned perjury in failing to turn over exculpatory evidence and then elicit[ed] testimony that the exculpatory evidence directly contradicted." We affirm.

## I. BACKGROUND[1]

Appellant was a chiropractor with several patients who were young dancers from his girlfriend's dance studio. Some of appellant's patients, including some of the dancers, testified that appellant had touched their vaginas, inserted his finger in their vaginas, and touched their breasts. Appellant was tried in one proceeding for all of the causes, and all of the victims testified at this consolidated trial. The jury convicted appellant of several of the charged offenses. In appellate cause number 13-13-00372-CR, appellant was convicted of one count of sexual assault of a child, and one count of indecency with a child by contact.[2] Appellant received fifteen years for the sexual assault of a child charge and eight years for the indecency with a child by contact charge.[3] The trial court ordered the sexual assault of a child charge to run concurrently with the charges in the other causes and the indecency with a child charge to run consecutively. In appellate cause number 13-13-00373-CR, appellant was convicted of one count of sexual assault, and he

---

[1] This case is before the Court on transfer from the Fifth Court of Appeals in Dallas pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] In this cause, appellant was found guilty of penetrating M.C.'s female sexual organ with his finger and by touching her breasts with his hand.

[3] The jury acquitted appellant of a second indecency with a child by contact charge as to M.C.

2

received a concurrent ten-year sentence.[4]  In appellate cause number 13-13-00374-CR, appellant was convicted of one count of indecency with a child by contact, and he was sentenced to a concurrent twelve-year sentence.[5]  In appellate cause number 13-13-00375-CR, appellant was convicted of one count of sexual assault and received a concurrent ten-year sentence.[6]

Appellant filed a motion for new trial alleging that the State had withheld exculpatory and/or impeaching evidence and that the prosecutor had engaged in misconduct.  The trial court held a hearing on appellant's motion for new trial, and the motion was denied by operation of law.  This appeal followed.

## II.  STANDARD OF REVIEW

We review a trial court's denial of a motion for new trial for an abuse of discretion. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993) ("The decision on a motion for new trial rests within the sound discretion of the trial court, and in the absence of an abuse of discretion this [C]ourt would not be justified in reversing the judgment.").  A trial court has broad discretion when assessing the credibility of the witnesses and in weighing the evidence when determining whether a different result would occur upon retrial.  *Messer v. State*, 757 S.W.2d 820, 827–828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

---

[4] In this cause, the jury found appellant guilty of sexually assaulting M.H. by penetrating her sexual organ with his finger without her consent.

[5] The jury convicted appellant of indecency with a child by touching H.B.'s genitals with his hand. The jury acquitted appellant of one count of aggravated sexual assault of H.B., a child.

[6] The jury convicted appellant of sexually assaulting E.L. by penetrating her sexual organ with his finger without her consent.  The jury acquitted appellant of two counts of indecency with a child regarding E.L.

In *Brady [v. Maryland*, 373 U.S. 83 (1963)] the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. Appellant must satisfy three requirements to establish a *Brady* violation: (1) the [S]tate suppressed evidence; (2) the suppressed evidence is favorable to defendant; and (3) the suppressed evidence is material. Incorporated into the third prong, materiality, is a requirement that defendant must be prejudiced by the state's failure to disclose the favorable evidence.

The Supreme Court subsequently extended *Brady* and held that the duty to disclose such evidence is applicable even if there has been no request by defendant, and that the duty to disclose encompasses both impeachment and exculpatory evidence. This duty also requires disclosure of favorable evidence known only to the police. Consequently, prosecutors have a duty to learn of *Brady* evidence known to others acting on the state's behalf in a particular case. It is irrelevant whether suppression of the favorable evidence was done willfully or inadvertently.

*Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (internal citations omitted).

### III. PERTINENT FACTS

At appellant's trial, E.L. testified that appellant had committed the alleged acts of penetrating her vagina with his finger when she sought treatment from him after a car accident in October 2005. E.L. claimed that she had sought treatment from appellant after the October 2005 car accident "at least one or two times a week for at least two months." It was during this period that E.L. alleged appellant started to touch her under her pants, put his hand on her vagina under her panties, and he put his finger inside her to "adjust her." E.L. was twenty when these alleged incidents occurred. Appellant points out that E.L. stated that appellant's records regarding E.L.'s treatment, including the records from the 2005 car accident, were missing or altered and that other witnesses testified that their records had also been altered, were missing, or incomplete. E.L. testified that after reviewing her chart from appellant's practice, she was surprised that

4

her "October 2005 accident is missing." She said, "They have records from 1998 to 2006 or '7, and even treatment in August of 2005 is listed but my accident in October is not. Additionally, there on the back page for some reason, was a photo of me taped to the inside of my chart, a prom photo of me and my friend that I went to the prom with."[7] E.L.'s testimony reflects that the only time that appellant penetrated her vagina with his finger was when she sought treatment from him after the October 2005 car accident.

Appellant states in his brief that after his trial, E.L.'s civil attorney, Lance Baxter, told appellant's trial counsel that Baxter had been approached by the State to obtain documents to verify E.L.'s claim that she sought treatment from appellant in October 2005 after the car accident. According to appellant, Baxter stated that "he found his *Stowers* letter and provided that document to the State while the trial was ongoing." Specifically, Baxter recalled giving the letter to an investigator named "Bowers."

According to appellant, once Baxter relayed that information to his trial counsel, his trial counsel immediately texted, emailed, and phoned the assistant district attorney, Shannon Miller, about the letter. The State concedes that, during the trial, it received the letter but it did not provide it to appellant's trial counsel.

After appellant was convicted, the trial court held a hearing on appellant's motion for new trial to determine whether the State withheld *Brady* information, if any, by failing to disclose Baxter's letter. At the hearing, Baxter testified that "based upon his *Stower*s letter, [E.L.] was not treated by [appellant] for injuries suffered in the car accident in

---

[7] E.L. claimed that neither she nor her parents recalled giving appellant that picture.

2005."[8]  Baxter further testified that he would have testified for either the State or the defense at appellant's trial had appellant's defense counsel known about him.

Miller testified that she was the prosecutor in this case and that she received an email from Investigator Bowers on April 16, 2013 regarding their initial conversation to obtain Baxter's letter.  Miller stated that she received a copy of the Baxter letter on April 16, 2013 during her cross-examination of a witness.  Miller related that Investigator Bowers "whispered in her ear that the information [in the Baxter letter] did not show anything about Appellant."[9]  And, she admitted that she did not review the Baxter letter until the trial concluded and that she never disclosed the existence of the letter to appellant's trial counsel.  Bowers testified that Baxter never told him that the absence of appellant's name in the letter indicated that E.L. was not treated by appellant after the October 2005 car accident.  According to Bowers, Baxter told him to check other sources for documentation of E.L.'s treatment after her October 2005 accident.

## IV.  *BRADY* VIOLATION

By his first issue, appellant complains that the State became aware of Baxter's letter during his trial and that it contains *Brady* material.  The letter did not mention appellant; moreover, at the motion for new trial hearing, Baxter testified that he had prepared the letter in order to document E.L.'s medical bills incurred after the accident

---

[8] Appellant's attorney asked, "And did you advise [Bowers] that based upon your review of your file, that . . . —that [E.L.] did not treat with [appellant] for any car accident in 2005?"  Baxter replied, "That's what I told him, yes."

[9] It is undisputed that the letter does not mention appellant.  Although the letter is not included in the reporter's record, as appellant has pointed out in his motion for rehearing, the letter was attached to his motion for new trial and was included in the Clerk's record.  We note that at the motion for new trial hearing, the letter was referred to as "Exhibit Number 1," but it was not listed as an exhibit by the court reporter.  We have reviewed the letter, and it does not mention appellant; therefore, our analysis does not change.  After reviewing appellant's motion for rehearing and the State's response, we deny the motion for rehearing.

and that, because the letter did not include appellant as a medical provider that indicated E.L. had not been treated by appellant after the October 2005 accident.

Appellant argues that his *Brady* violation claim is meritorious because he showed the following: (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the undisclosed evidence constitutes exculpatory or impeachment evidence that is favorable to him; (3) if disclosed and used effectively, the evidence may make a difference between conviction and acquittal; and (4) the evidence is material, that is, presents a reasonable probability that, had the evidence been disclosed, the outcome of the proceedings would have been different. *See Pena v. State*, 353 S.W.3d 797, 807–09 (Tex. Crim. App. 2011).

The State conceded at the motion for new trial hearing and concedes on appeal that it failed to disclose the Baxter letter. However, in order to meet his burden appellant had to show that the letter constituted favorable evidence and that it would have made a difference in the outcome of his trial. Appellant argues that the Baxter letter, combined with Baxter's testimony that E.L. would have informed him of the treatment from appellant if it had occurred, makes the evidence exculpatory and/or impeachment evidence that is favorable to him and that had it been disclosed, if used properly and effectively, it would have made a difference between being convicted and being acquitted.

Appellant states that a theme presented by the State at trial was that some of his patients' records were missing including testimony by E.L. that her records were missing regarding the 2005 accident and that his trial counsel testified that he would have used the Baxter letter and called Baxter as a witness had the letter been disclosed by the State. Specifically, appellant's trial counsel testified he would have used the letter during cross-

7

examination of E.L. to show that she was not telling the truth and to support appellant's position that E.L. never received treatment from appellant after the October 2005 accident—the time period wherein she claims he committed the act that the jury found constituted sexual assault. Appellant also points out that other witnesses claimed that the records were altered or fabricated. Appellant argues that "[t]he evidence was favorable" to him because the letter "strengthens" his defense that E.L. had not been treated by appellant after the October 2005 accident.

The State responds that the letter was not favorable to appellant's defense because it did not state that E.L. did not receive any treatment from appellant after the October 2005 accident. The State argues that the letter is not impeaching because it does not dispute, disparage, deny, or contradict other evidence. The State claims that the letter merely showed that Baxter did not list the treatment from appellant as a cost in E.L.'s October 2005 car accident. In addition, the State points out that no one had informed any State agents that Baxter stated that if the accident was not listed in his letter, then that meant that E.L. did not receive treatment.

We agree with the State. Although Baxter testified at the motion for new trial hearing that he told Bowers that the letter meant that E.L. never received treatment from appellant in October 2005, Bowers contradicted Baxter's testimony by stating that during appellant's trial, Baxter did not inform him that that is what the letter meant. The trial court is the finder of fact, and when contradictory evidence is presented, the trial court must determine what evidence to believe. *Bell v. State*, 256 S.W.3d 465, 468 (Tex. App. 2008) ("At a hearing on a motion for new trial, a trial court as finder of fact is free to believe or disbelieve the testimony of any witness, even if the testimony is uncontroverted.") (citing

*Keeter v. State*, 74 S.W.3d 31, 38 (Tex. Crim. App. 2002); *Purchase v. State*, 84 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).  Thus, the trial court was free to believe Bower's testimony, to disregard Baxter's testimony, and to conclude that the State was not in possession of any evidence that the letter meant that E.L. had not received treatment from appellant after her October 2005 accident.  *See Messer*, 757 S.W.2d at 827–28; *see also Bell*, 256 S.W.3d at 468.  Thus, the record supports a finding that the State did not possess knowledge that Baxter would testify that the letter meant that E.L. had not received treatment from appellant.  *See Harm*, 183 S.W.3d at 407 ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.").  In addition, the trial court may have concluded that Baxter did not have personal knowledge of what medical treatment E.L. had after her October 2005 accident based on his testimony that he relied on her to tell him about all of the medical providers she saw and his acknowledgment that she could have failed to tell him about appellant's treatment.[10]  *See Pena*, 353 S.W.3d at 814 ("The State does not have a duty to disclose favorable, material evidence if it would be inadmissible in court.").

Moreover, the letter did not itself establish that E.L. did not receive treatment from appellant.  And, Baxter testified that he only included those medical charges that E.L. had told him about.  Thus, the letter by itself is not exculpatory.  *See Harm*, 183 S.W.3d at 408 ("Exculpatory evidence may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence.").  The letter merely established that E.L. sought treatment from certain medical providers after her

---

[10] Appellant did not call E.L. to testify at his motion for new trial hearing.

accident and failed to mention appellant. Because the letter does not mention appellant, it does not dispute or contradict E.L.'s testimony that she sought treatment from appellant after her October 2005 car accident.[11] And, Baxter acknowledged that there were other possible reasons that appellant was not listed in the letter. It was undisputed that E.L. had been treated by appellant on other occasions in 2005 and that he had treated her after she had been involved in another car accident.[12] Therefore, the trial court may have reasonably inferred that E.L. may have been mistaken about the date, that E.L. had not informed Baxter about the treatment, or that E.L. had been treated by appellant for an injury unrelated to the October 2005 car accident and was confused.[13] Thus, we conclude that appellant did not show that the letter was favorable to him. Therefore, the trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's first issue.[14]

---

[11] As previously mentioned, the trial court could have determined that when the State acquired the letter, Baxter had not informed the State that the letter meant E.L. had not been treated by appellant after the October 2005 accident.

[12] It is also undisputed that E.L. sought treatment from appellant starting at the age of approximately twelve and ending at approximately the age of twenty-two or twenty-three. The years were 1998 until 2008, "on and off." During cross-examination of E.L., appellant's trial counsel said that E.L. had been treated by appellant twenty-six times after she began working for appellant. Appellant's trial counsel stated, "While you [E.L.] were employed there, you saw him nine times in June of '02, one time in July, and you didn't see him any in August. So, you know, another 10 to 12 times while you are employed. So you are talking 40— you know, 35, 40 times that you were in his office or that you were adjusted or seen by him?" E.L. began working for appellant sometime in May 2002, and she turned seventeen on June 7, 2002.

[13] At appellant's trial, E.L. testified that she "experience[d] some short-term memory loss after the car accident because of the extensive damage to the car, my injuries, and the amount of medication that I was on, consequently."

[14] By a sub-issue to his first issue, appellant contends that the *Brady* violation of failing to disclose the letter affects the other cases against him. Appellant argues that because the State consolidated the four cases against him, they were intrinsically intertwined, thus causing him harm in all the cases. Appellant claims that the State's theory that records were missing due to appellant's tampering was bolstered by E.L.'s testimony, and that if the jury had heard about the letter in conjunction with Baxter's testimony, he could have rebutted that theory. However, because we have concluded that the trial court did not abuse its discretion in concluding that no *Brady* violation occurred, we need not address this issue as it is not dispositive. *See* TEX. R. APP. P. 47.4.

## V.  PROSECUTORIAL MISCONDUCT

By his second issue, appellant contends that the prosecutor committed misconduct by offering E.L.'s perjured testimony because the prosecutor was aware that E.L. had not been treated by appellant after the October 2005 car accident.  Appellant relies on Baxter's statement that the letter meant that E.L. had not received treatment from appellant after her October 2005 car accident.  However, because the trial court may have believed Bower's testimony that he was not aware of Baxter's statement when the prosecutor received the letter, we cannot conclude that the trial court abused its discretion by denying appellant's motion for new trial on that basis.  We overrule appellant's second issue.

## VI.  CONCLUSION

We affirm the trial court's judgments.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
9th day of April, 2015.

11